<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOHNNA RINI<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY<br><br>Defendant. | Civil Action No. 2:12-CV-06362 (SDW)<br><br><br><br>**OPINION**<br><br><br><br>March 24, 2014 |

**Wigenton, District Judge.**

Before the Court is Plaintiff Johnna Rini's ("Rini" or "Plaintiff") appeal on the final administrative decision of the Commissioner of Social Security ("Commissioner"), with respect to Administrative Law Judge Leonard Olarsch's ("ALJ Olarsch") denial of Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and XVI, respectively, of the Social Security Act (the "Act"). Plaintiff, pursuant to 42 U.S.C. § 405(g), seeks review of a determination of the Commissioner, which denied Plaintiff's applications for DIB and SSI under the Act.

This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper under 28 U.S.C. § 1391(b).

This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons set forth herein, this Court **REMANDS** the ALJ's Decision dated April 13, 2011 ("ALJ's Decision").

**BACKGROUND AND PROCEDURAL HISTORY**

*a. Education and Work History*

Plaintiff was born on August 1, 1961. (R. at 13, 205.) She has a high school education and has worked previously as a customer service representative, secretary, waitress and cashier at several different businesses. (R. at 13, 221.) Plaintiff maintained two jobs in customer service, the longest with Gussco Manufacturing Co. from March 1999 to January 2003. (R. at 215.)

Plaintiff's Disability Report Form SSA-3368 provides that the position with Gussco Manufacturing Co. required her to "answer phones, take folder orders, troubleshoot for customers and assist[] the manager." (R. at 215.) The performance of her duties required her to walk for approximately one hour, stand one hour, sit six hours per day, and "write, type or handle small objects" for six hours per day. (R. at 215-16.) The heaviest weight and most frequently lifted weight was less than 10 lbs. (R. at 216.)

In one work history, Rini indicated that she "answer[ed the] phone," completed "computer work," "retrieve[d] stock," "inventory," and lifted and carried "box[es] of folders from the back room to desk almost every day." (R. at 222.) However, on the Form SSA-3369 Rini noted that she had to walk for approximately two hours, stand one hour, and was able to sit only four hours daily. (R. at 222.) She also described that she had to stoop for approximately one hour per day and "write, type or handle small objects" for only two hours per day. Lastly, she stated that although the most frequently lifted weight was less than 10 lbs. per day, the heaviest weight she lifted was around 20 lbs. (R. at 222.)

Plaintiff last worked in February 2006. (R. at 58-59.) Rini identifies July 19, 2006 as the alleged onset date of her disability due to frequent asthma attacks, and being pregnant at the time, pregnancy-induced heart failure. (R. at 60-63.)

*b. Medical History and Treatment*

On July 1, 2008, Rini filed an application for DIB. (R. at 21.) On July 19, 2008, Rini also filed an application for SSI benefits (Id.). In both the DIB and SSI applications, Plaintiff alleged her disability began on or around July 19, 2006. (Id.) Rini alleged that she suffers from congestive heart failure, chronic obstructive pulmonary disease ("COPD"), asthma, and a leaking heart valve. (R. at 23, 214.)

On October 28, 2010, Plaintiff testified about her pulmonary and cardiovascular problems. Regarding her pulmonary issues, she claimed, among other things, that she sometimes had to sleep sitting up, always had to carry multiple inhalers with her, had trouble walking more than the length of half-a-block before having to sit down for approximately ten minutes, and that she experienced constant shortness of breath on exertion. (R. at. 60-63.) As to her cardiovascular symptoms, she stated that she suffered from chest pains resulting in shortness of breath and that her medications induced fatigue and affected her memory. (Id.) Regarding her ability to work due to these issues, Plaintiff testified that she thought insomnia would interfere with her ability to perform during the day and that, due to her trouble breathing, she did not think she could do a sedentary job full-time. (Id.)

The record reflects that Plaintiff was able to care for her child, did light cleaning daily (including laundry) without the need of assistance, washed dishes, and prepared meals for approximately 30 minutes daily. (R. at 229, 231, 250.) Plaintiff spent approximately two hours each week shopping for clothes and food, and went outside three to four days per week. (R. at

231-32.)  Plaintiff continued to smoke daily, which at times amounted to two packs per day.  (R. at 67, 335, 391.)

On February 4, 2006, approximately five months before Plaintiff's alleged onset date, Plaintiff was transported by emergency services to Hollywood Memorial Regional Hospital ("HMRH") with symptoms of an asthma attack and shortness of breath.  She was treated with Albuterol 2.5 milligrams (mg) mixed with Atrovent 0.5 mg.  (R. at 281-82.)  On February 15, 2006, emergency services were called again and Plaintiff was given breathing treatments before being transported to HMRH.  (R. at 286-89.)  The record reflects that Plaintiff did not have a nebulizer at the time of these pulmonary events.  (R. at 297.)

On August 17, 2006, Plaintiff was admitted to HMRH with symptoms that presented as asthma exacerbation and hyperglycemia.  (R. at 299-302.)  The record indicates that Plaintiff had "[run] out of her inhalation medication" at time of admission.  (R. at 301.)  On September 8, 2006, Plaintiff was admitted to HMRH and diagnosed with dyspnea and asthma, treated with Albuterol and Atrovent nebulizer treatments, and given prescriptions for Coreg, Lasix, Albuterol, Singulair, Altace and Klorcan.  (R. at 303-07.)  On September 9, 2006, Plaintiff presented at HMRH with complaints of shortness of breath, which she suffered for around one hour.  (R. at 311-12.)

On September 20, 2006, Plaintiff was admitted at North Shore Medical Center in Miami, Florida with shortness of breath.  (R. at 314)  She was diagnosed with exacerbation of obstructive chronic bronchitis and prescribed: Coreg, Lasix, Albuterol nebulizer, Giprofloxacin 500mg daily, Medrol Dosepak as directed, and Albuterol MDI with two puffs four times daily. (R. at 313-29.)

Starting September 22, 2008, Plaintiff attended monthly visits with her treating physician, Dr. Francis Molinari ("Dr. Molinari"). On September 30, 2008 and October 21, 2008, Dr. Leonard Savino ("Dr. Savino") also examined Plaintiff and diagnosed her with "supposed cardiomyopathy," "possible improved [chronic heart failure]," and "hypertension;" but Dr. Savino specifically noted that there was "no evidence of any residual cardiomyopathy" and that Plaintiff had "relatively stable possible hypertensive disease." (R. at 395-96.) On January 20, 2009, an echocardiogram read by Dr. James Quinn showed moderate global left ventricular dysfunction with an ejection fraction of 44%. (R. at 399.) Further, Plaintiff's chest x-ray was normal and the echocardiogram indicated that Plaintiff's aortic, mitral, tricuspid, and pulmonic valves opened normally. (R. at 360, 371, 383.)

On February 24, 2009, Dr. Rambhai Patel ("Dr. Patel"), at request of the Commissioner, examined Plaintiff who complained of hypertension, spots in her eyes, dizziness three to four times per week, and chest pain. (R. at 334-36.) Plaintiff's blood pressure was within normal limits, she was not in acute distress, and she had a regular sinus rhythm. (R. at 335.) An examination of the lungs presented diminished breath sounds, and Dr. Patel diagnosed Plaintiff with "chronic asthma," "hypertension," "atypical chest pain by history," and the "possibility of hypertension cardiovascular disease [could not] be ruled out." (R. at 334-36.)

On May 28, 2009, Plaintiff visited Dr. Molinari and complained of dizzy spells and stated she awoke on the floor after a bout of unconsciousness. (R. at 423.) She complained of swelling of her hands as well as chest and heart palpitations. (Id.) Dr. Molinari examined her and found that Rini's lungs were clear, breath sounds were normal, and she had a regular heart rate. (Id.)

Dr. Molinari completed two Medical Report forms at the request of the State Division of Disability Services dated January 23, 2009 and June 2, 2009. Dr. Molinari's January 23, 2009

5

report noted that Plaintiff had shortness of breath on exertion, a history of congestive heart failure, and an ejection fraction of 44% with ventricular dysfunction. (R. at 330-33.) In the June 2, 2009 report, Dr. Molinari diagnosed her with asthma, hyper-cholesterolemia, and hypertension. (R. at 362-67.) He reported that from the his first examination up and to the time of writing the report, physical findings of Plaintiff included bilateral wheezing, shortness of breath with minimal exertion, daily chest wall pressure (usually lasting for 20 minutes, radiating to her tongue and to the side of her face), bilateral grate III/IV symptoms radiating from the sternum, chronic heart failure induced by her pregnancy in 2006, and continued symptoms of palpitations, occasional chest tightness, and increased fatigue. (Id.)

On June 5, 2009, Dr. Fadi N. Chaaban examined Plaintiff and diagnosed her with a history of postpartum cardiomyopathy, hypertension, and COPD with wheezing. (R. at 401-02.)

On September 3, 2009, Plaintiff reported to Dr. Molinari that she was suffering from fatigue and somnolence. (R. at 425-26.) On October 2, 2009, upon complaints of shortness of breath, Dr. Young I. Jo diagnosed Plaintiff's condition as COPD with an asthmatic component, but noted her chest was clear and her heart was regular. (R. at 391.) An October 16, 2009 echocardiogram was also normal. (R. at 398.) A subsequent echocardiogram taken almost one year later on September 3, 2010, showed borderline left ventricular systolic function, normal left atrial pressure, an ejection fraction of 45-50%, and no valve dysfunction. (R. at 406.) A September 18, 2010 stress test was normal, with an ejection fraction of 64%. (R. at 394.) Further, on the same day, a Negative Perfusion Imaging and ECG test were performed for the evaluation of ischemia, resulting in a negative stress ECG with no evidence of ischemia. (R. at 400, 403.)

On November 1, 2010, Dr. Molinari noted that Plaintiff complained of back pain, and assessed lower lumbar sacral spine pain and paraspinal muscle strain. (R. at 442, 446.) On November 2, 2010, Dr. Bart De Gregorio evaluated Plaintiff and stated that while her ejection fraction was borderline, it did not evidence impaired functioning. (R. at 380.)

It should be noted that, although Plaintiff describes in great detail the many times she presented to Dr. Molinari with various symptoms demonstrating her disability or side-effects from prescriptions, Dr. Molinari stated after examinations from June 2009 to November 2010 that Plaintiff's lungs were clear, breath sounds were normal, and she had a regular heart rate on eight different occasions over a one and a half year period of time. (See R. at 424, 427-28, 431, 433, 435, 439, 443.) Specifically, on August 23, 2010, Dr. Molinari noted that "to present there are no tech reports, cardiology reports, or pulmonary reports to substantiate Plaintiff's disability." (R. at 438.)

*b. Medical Assessment of Ability to Work*

On March 4, 2009, Dr. Mohammed Rizwan ("Dr. Rizwan"), a non-examining state medical consultant, assessed Plaintiff. (See Physical Residual Functional Capacity Assessment form, R. 350.) He stated that Plaintiff had the ability to perform a range of light sedentary work, and limited her ability against occasionally climbing ramps, stairs, ladders, ropes and scaffolds. (R. at 350-57.)

In Dr. Molinari's June 2, 2009 report, Dr. Molinari limited Plaintiff's ability to lift and carry to a maximum of 10 pounds. (R. at 362-67.) He also estimated that Plaintiff could stand and/or walk for less than two hours per day, and sit for up to six hours per day. (Id.) On a prescription blank dated October 26, 2009, Dr. Molinari summarily stated that Plaintiff was unable to work from July 19, 2006. (R. at 369.) On November 22, 2011, Dr. Molinari assessed

7

Plaintiff's disability over the previous year. (See State of New Jersey Welfare form, R. 445.) He diagnosed her with intrinsic asthma, COPD, and hyperlipidemia, and found that she could not lift over 20 pounds, and limited her from climbing, stooping and lifting. (R. at 445-46.) He indicated on a State of New Jersey Welfare form, that in his opinion, Plaintiff could not work and is a likely candidate for SSI benefits. (R. at 445-46.)

*d. The ALJ's Decision*

On July 21, 2008, Rini filed a Title II "application for a period of disability and disability insurance benefits." (R. at 21.) On July 24, 2008, Rini also filed a Title XVI "application for supplemental security income." (Id.) Plaintiff's applications were initially denied and then denied again on July 17, 2009 upon reconsideration. (Id.) On August 14, 2009, Plaintiff requested a hearing before an administrative law judge. (Id.) Two hearings were held: the first on October 28, 2010 and a supplemental hearing was held on April 14, 2011. (R. at 21, 31-51, 52-87.)

On April 25, 2011, ALJ Olarsch issued the ALJ Decision, which stated that "based on the application for a period of disability and disability insurance benefits… the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act." (R. at 26.) Further, ALJ Olarsch concluded that "based on the application for supplemental security income… the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act." (Id.) After consideration of Plaintiff's age, education, work experience, and residual functional capacity ("RFC"), ALJ Olarsch held that since "claimant reports that her work as a customer service representative required no more than a sedentary residual functional capacity, both as the claimant actually performed this work, and as this work is generally performed in the national economy... [c]onsequently, in comparing the claimant's [RFC] with the physical and mental

8

demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed." (R. at 21.)

On May 4, 2011, Plaintiff submitted a request for Appeals Council review, which was denied on August 13, 2012. (R. at 16-17, 1-5.)  On October 10, 2012, Plaintiff filed the instant matter before this Court. (Compl.)  Plaintiff now "asserts that the Commissioner's decision is not based on substantial evidence as required by 42 U.S.C. § 405(g)." (Pl.'s Br. at 1.) Additionally, Plaintiff also "contends that the Commissioner erred as a matter of law in denying her claim for Social Security and Supplemental Income disability benefits …." (Pl.'s Br. at 1.)

**LEGAL STANDARD**

This Court exercises plenary review of all legal issues on an appeal of a decision by the Commissioner of Social Security.  Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000).  This Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions.  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988) (internal quotations omitted).

Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla'; it is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Bailey v. Comm'r of Soc. Sec., 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" Bailey, 354 F. App'x. at 616 (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "'the possibility of drawing two

inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" Daniels v. Astrue, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." Cruz v. Comm'r of Soc. Sec., 244 F. App'x. 475, 479 (3d Cir. 2007) (citing Hartranft, 181 F.3d at 360). This Court is required to give deference to the ALJ's findings if supported by substantial evidence. Scott v. Astrue, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." Cruz, 244 F. App'x. at 479 (citing Hargenrader v. Califano, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979) (quoting Saldana v. Weinberger, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." Podedworny v. Harris, 745 F.2d 210, 221-22 (3d Cir. 1984).

**DISCUSSION**

For purposes of SSI benefits, a person is considered disabled if she can demonstrate an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §

423(d)(1)(A). A medically determinable physical or mental impairment "is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

A claimant will be found disabled "only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for [her], or whether [s]he would be hired if [s]he applied for work." 42 U.S.C. § 423(d)(2)(A). Substantial gainful activity is work that involves significant physical or mental activities and is done for pay or profit. See 20 C.F.R. § 416.972(a)-(b) (2012). "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A).

A five-step sequential analysis is used to determine whether a claimant is disabled as defined under the Act. 20 C.F.R. § 404.1520(a)(1). If a claimant is found to be disabled or not disabled at any of the five steps, the analysis does not proceed to the remaining steps. 20 C.F.R. § 404.1520(a)(4). In the first step, the ALJ considers the claimant's work activity, if any. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in substantial gainful activity, she is not disabled. Id. At the second step, the ALJ considers the medical severity of the claimant's impairment or combination of impairments that is expected to result in death, or has lasted or is expected to last for a continuous period of at least 12 months. 20 C.F.R. § 404.1529(a)(4)(ii). If the claimant's impairment does not, then she is not disabled. Id. At the third step, the ALJ considers the medical severity of the claimant's impairment or combination thereof. 20 C.F.R. §

11

404.1520(a)(4)(iii). If the claimant has an impairment that meets or equals one of the listings in the Code of Federal Regulations and meets the duration requirement, the claimant will be found disabled. Id. If the claimant is not found to be disabled, the ALJ moves to the fourth step, in which the ALJ considers the claimant's RFC and past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is deemed fit to perform his or her past relevant work, the claimant is not disabled. Id. Otherwise, the ALJ moves on to the fifth step. At this final step, the burden shifts to the Commissioner to demonstrate, using the claimant's RFC, age, education, and work experience that the claimant can perform other work activities that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If she is incapable, a finding of disability will be entered. Id. However, if the claimant can perform other work, she will be found not disabled. Id.

  a. Step One

At step one, if the ALJ determines that plaintiff is engaged in "substantial gainful activity," disability benefits are denied. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (citing 20 C.F.R. §§ 404.1520(b), 416.920(b)).

In the instant matter, ALJ Olarsch found that Plaintiff "has not engaged in substantial gainful activity since July 19, 2006, the alleged onset date." (R. at 23.) Therefore, the ALJ proceeded to the second step.

  b. Step Two

At step two, the ALJ examines whether the claimant has a medically determinable impairment or combination of impairments that are "severe." 20 C.F.R. § 416.929. The ALJ also considers all symptoms to the extent "they can reasonably be accepted as consistent with the medical evidence, and other evidence." Id.

In the instant matter, ALJ Olarsch found that Plaintiff "has the following severe impairments: congestive heart failure, chronic obstructive pulmonary disease and asthma." (R. at 23.) As a result, he proceeded to step three of the sequential analysis.

c. Step Three

At step three, "the ALJ must compare the claimant's medical evidence to a list of impairments presumed severe enough to negate any gainful work." Caruso v. Comm'r of Soc. Sec., 99 F. Appx. 376, 279 (3d Cir. 2004). If plaintiff's impairments "meet or equal" a listing, plaintiff is considered disabled and will be awarded benefits. Knepp v. Apfel, 204 F.3d 78, 85 (3d Cir. 2000).

Here, ALJ Olarsch analyzed Plaintiff's impairments under the criteria of listings 3.02, 3.02A, 4.02, 4.03, and 4.04. (R. at 23-24.) Under section 3.00 of the Listing of Impairments titled "Respiratory System," an evaluation of "[r]espiratory disorders along with any associated impairment(s) must be established by medical evidence. Evidence must be provided in sufficient detail to permit an independent reviewer to evaluate the severity of the impairment." 20 C.F.R. Pt. 4, Subpt. P, App. 1 § 3.00.

ALJ Olarsch considered both Plaintiff's asthma and COPD symptoms. (R. at 23-24.) Chronic asthma is evaluated under the same metrics as COPD. See 20 C.F.R. Pt. 4, Subpt. P, App. 1 § 3.03. For asthma attacks, which are episodic as opposed to chronic, they must occur "in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year." 20 C.F.R. Pt. 4, Subpt. P, App. 1 §§ 3.00(C), 3.03(B). ALJ Olarsch, utilizing the grids provided in the regulations, determined that the Plaintiff's asthma did "not rise to the level of meeting the [COPD] criteria of 3.02A, with the attendant FEV values, or meet[] the frequency and severity of asthma attacks with the requisite

13

physician intervention or in-patient hospitalization during a consecutive 12-month period." (R. at 24.) Regarding Plaintiff's COPD, ALJ Olarsch held that Plaintiff's "chronic pulmonary insufficiency did not correspond to the appropriate FEV, DLCO, PO2, PCO2 or FVC values of listing 3.02." (Id.)

ALJ Olarsch also held that Plaintiff's "heart disease does not satisfy the requirements of 4.03, 4.02 [Chronic Heart Failure] or 4.04 [Ischemic Heart Disease] given that there is no supporting evidence regarding the required severity of ischemic heart disease, coronary artery disease or chronic heart failure." (Id.) As a result, ALJ Olarsch found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" to warrant a finding of disability (R. at 23.)

When a plaintiff's impairment(s) do not meet or equal the listed impairments, the ALJ must assess the claimant's "[RFC] based on all the relevant medical and other evidence in [the plaintiff's] record . . . ." 20 C.F.R. § 416.920(e). In assessing the plaintiff's RFC, the ALJ considers the plaintiff's "ability to meet the physical, mental, sensory, and other requirements of work . . . ." 20 C.F.R. § 404.1545(a)(4). The RFC assessment is then used at the fourth step of the sequential evaluation process to determine if the claimant can perform his or her past relevant work and at the fifth step "to determine if [the claimant] can adjust to other work." 20 C.F.R. § 416.920(e).

*1. Medical Evidence*

Great weight should be accorded to a treating physician's reports, "especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (quoting

Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987)). However, "[a]n ALJ may reject a treating physician's opinion . . . on the basis of contradictory medical evidence" so long as he provides reasons for his decision. Id. (citing Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985)).

In the instant matter, ALJ Olarsch found that "the claimant has the [RFC] to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b)." (R. at 24.) Light work is defined as:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. 404.1567(b); 416.967(b). In reaching this conclusion, ALJ Olarsch stated that he considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," including opinion evidence. (R. at 24.)

ALJ Olarsch followed a two-step process where he determined and/or evaluated "whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the claimant's pain or other symptoms" and "the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning." (R. at 24.) If the statements about the "intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by

15

objective medical evidence, the [ALJ] must make a finding on the credibility of the statements based on a consideration of the entire case record. (R. at 24); see 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529(b).

ALJ Olarsch held that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms…." (R. at 24.) He noted that multiple echocardiograms and a myocardial perfusion imaging report presented that Plaintiff suffered from a "mild impairment," including an "ejection fraction of 64%." (R. at 25.) Further, ALJ Olarsch noted that diagnostic findings demonstrated mild pulmonary limitations. (Id.)

*2. Plaintiff's Credibility*

"Allegations of pain and other subjective symptoms must be supported by objective medical evidence." Hartranft, 181 F.3d at 362 (citing 20 C.F.R. § 404.1529). Section 404.1529(a) provides that "statements about your pain or other symptoms will not alone establish that you are disabled." 20 C.F.R. § 404.1529(a). The ALJ must weigh the medical evidence to determine whether the claimant's alleged limitations "can reasonably be accepted as consistent with the medical . . . evidence." Id.; see also Hartranft, 181 F.3d at 362 ("[T]his obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.").

In addition to the objective medical evidence, the ALJ considers other factors in assessing the individual's subjective symptoms, such as: the claimant's daily activities, the type of medication taken to treat the symptoms and its effectiveness, other treatment a claimant has received for relief of symptoms, and other factors concerning limitations and restrictions due to the alleged symptoms. See 20 C.F.R. § 404.1529(c)(3)(i)-(vii). A claimant's complaints of pain should be given "great weight" only when supported by objective medical evidence, but may be

disregarded if contrary medical evidence exists. Mason v. Shalala, 994 F.2d 1058, 1067-68 (3d Cir. 1993) (citations omitted).

Here, ALJ Olarsch found that although Plaintiff's "impairments could reasonably be expected to cause the alleged symptoms," he concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC] assessment." (R. at 24.) ALJ Olarsch gave weight to the testimony of Dr. Gerald Galst ("Dr. Galst"), an impartial medical expert, and found him credible and agreed that Plaintiff's "cardiac and pulmonary impairments do not meet [or] equal any listing, allow for a light [RFC]." (R. at 24-25.) ALJ Olarsch specifically found it significant and credible when Dr. Galst testified that Plaintiff's cardiac function "has improved to the point where it is essentially normal." (R. at 25.)

ALJ Olarsch held that indications of mild impairments were "unremarkable," and noted that a November 2012 letter from a physician found that the ejection fraction is not felt and did not impair his functioning and that Plaintiff is "not disabled from a cardiovascular perspective." (R. at 25.) Further, ALJ Olarsch reviewed Dr. Molinari's June 2, 2009 medical report and noted that although it recommended a "sedentary" RFC, he found it "inconsistent" given her symptoms, and specifically, given the medical findings that Plaintiff suffered from "moderate global ventricle dysfunction, normal chest x-ray findings, and essentially subjective complaints of palpitations, shortness of breath and fatigue." (Id.) Moreover, ALJ Olarsch recognized that Dr. Molinari's November 2010 examination indicated a light RFC limitation, which was consistent with the rest of the medical evidence. (Id.)

To support his finding for an RFC to perform "light work" ALJ Olarsch relied on reports demonstrating mildly impaired (or essentially improved to normal) cardiac functionality, a "clear

17

chest and mild pulmonary limitations" with normal chest x-ray results, and "no neuromusculoskeletal or neurological complaints or functional limitations. (Id.) He also noted that Plaintiff continues to smoke regardless of her COPD. (Id.) Lastly, ALJ Olarsch noted the Plaintiff's reported activities of daily living. (Id.) ALJ Olarsch pointed out that Plaintiff reports that she maintains daily living consistent with a light work RFC, including "caring for her two-year-old son, cleaning, washing dishes, preparing meals, and shopping." (R. at 26.)

Plaintiff argues that ALJ Olarsch failed to explore and consider the side effects of her medication as he was required to do. See Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3rd Cir. 1999). The record indicates several complaints of chest pain, fatigue, dizziness and palpitations, among others; and ALJ Olarsch should have considered these side effects. (See R. at 420, 421, 424, 426.)

d. Step Four

If the ALJ is unable to make a determination at the first three steps of the sequential analysis, at step four the ALJ must determine whether the plaintiff has the RFC to perform her past relevant work experience. 20 C.F.R. § 404.1520(f). If the ALJ finds that plaintiff can still do the kind of work plaintiff previously engaged in, plaintiff is not disabled. Id.

Here, ALJ Olarsch determined that Plaintiff is "capable of performing past relevant work as a customer service representative... [and t]his work does not require the performance of work-related activities precluded by claimant's [RFC]." (R. at 26.) ALJ Olarsch determined that her work as a customer service representative "required no more than a sedentary [RFC,]" and this is congruent with how Plaintiff "actually performed this work, and as this work is generally performed in the national economy." (R. at 26.)

However, ALJ Olarsch did not fully address Plaintiff's limitations in the ALJ's Decision and their impact on Plaintiff's past relevant work. He should clarify which material in the record was relied upon to support his finding for an RFC to perform "light work", and specify how he reached the conclusion that Plaintiff is able to perform past relevant work as a customer service representative. ALJ Olarsch stated he did not find the treating physician's findings well-rationalized or supported by the record, but he should also clarify what materials and opinions he relied on for his reasoning in determining Plaintiff's ability to perform past relevant work, and if necessary, include a vocational expert.

**CONCLUSION**

For the foregoing reasons, this Court **REMANDS** the ALJ's Decision for further clarification.

s/ Susan D. Wigenton, U.S.D.J.

cc: Parties